IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILFREDO CONTRERAS,<br><br>Defendant. | 4:12CR3125<br><br>FINDINGS AND<br>RECOMMENDATION |

This matter is before the court on defendant Wilfredo Contreras' Motion to Suppress, (Filing No. 28). For the reasons set forth below, the motion should be denied in its entirety.

FACTUAL FINDINGS

Investigator Mark Dreher is employed by the Grand Island Police Department and is assigned to work with the Central Nebraska Drug and Safe Streets Task Force (the "Task Force"). Prior to the events that are the subject of the pending motion, Dreher received information from a cooperating witness that Contreras was involved in the distribution of methamphetamine. Dreher was further aware that Contreras had a case pending against him in Hall County, Nebraska for driving without an operator's license and was subject to a bench warrant due to Contreras' failure to appear in court. Dreher conducted periodic searches of relevant databases, including vehicle registrations to try to locate an address for Contreras. Based on these searches, Dreher did not believe any vehicles were registered under Contreras' name.

On October 30, 2012, at approximately 4:00 p.m., Dreher observed Contreras driving a dark green pick-up truck in Grand Island, Nebraska. The officer was driving an unmarked vehicle. Dreher followed Contreras and contacted Grand Island Police Officer Rick Roy, who was in uniform and in a marked car, and requested that he initiate a stop

of Contreras. Dreher also contacted other on-duty members of the Task Force and apprised them of the imminent traffic stop.

Roy located Contreras as he was entering the parking lot of a Wal-Mart store. Contreras drove into a parking stall and Roy pulled in behind him, blocking his exit, and activated the emergency lights on his police vehicle. Dreher arrived about the same time and pulled his vehicle behind Roy's. Contreras, the sole occupant of the pickup truck, exited the vehicle and asked the officers why they stopped him. Dreher informed Contreras that he was driving without a license and that there was a warrant for Dreher's arrest. Dreher asked for Contreras' identification and Contreras provided a Michoacán[1] State driver's license with Contreras' picture but the name "Macario Wilfredo Contreras." Dreher asked Contreras his real name and Contreras responded that it was "Wilfredo Contreras." Contreras was arrested and taken into custody, with the vehicle he was driving still located in the Wal-Mart parking lot.

Two policies address the impoundment of vehicles by the GIPD: the "Vehicle Inventories" policy and the "Vehicle Towing & Impoundment" policy. Under the "Vehicle Inventories" policy, "Officers will tow all vehicles involving a custodial arrest of the driver of the vehicle unless there are extenuating circumstances," (Ex. 2; Vehicle Inventories § II(A)), with officers required to document all "extenuating circumstances" if the driver of the vehicle is arrested and the vehicle is not towed. (Ex. 2; Vehicle Inventories § II (B)). Extenuating circumstances may exist, under GIPD policy, if the registered owner is present at the time of the encounter, has a valid driver's license vehicle registration, and the vehicle can be released to him or her. Moreover, as stipulated by the parties, "[i]f the owner of a vehicle is not present, and the vehicle is the only vehicle for a particular family . . . [a law enforcement officer] will permit the owner to come take the vehicle. However, the owner must make it to the scene of the arrest

---

[1] Michoacán is a state in the country of Mexico.

before the officers leave." (Filing No. 48, ¶2).[2] Neither of these extenuating circumstances was applicable to defendant Contreras, and upon his custodial arrest in the Wal-Mart parking lot, the vehicle was subject to being towed under the guidelines of the GIPD Vehicle Inventories policy.

> GIPD's "Vehicle Towing & Impoundment" policy states:
>
> I.  Policy
>
> To provide for the efficient removal of vehicles from the streets, alleys, and other publicly-owned property of the City when said vehicle has been abandoned, left standing in violation of City Code, and to provide for the removal and impoundment of vehicles in which the operator has been taken into custody.
>
> II.  Procedure
>
>   A.  Vehicle Tows
>
>   . . .
>
>   2.  Tows from private property may be done by department personnel if the vehicle is part of a criminal investigation, or upon the completion of a "Request for Removal Waiver" submitted to the department.
>
>   3.  Other private property issues relating to towing will be the responsibility of the property owner.

(Ex. 2; Vehicle Towing & Impoundment §§ I & II(A)(2 & 3)).

---

[2] Testimony of law enforcement officers can be used to establish department policy. See Petty, 367 F.3d 1012 ("testimony can be sufficient to establish police procedures").

3

Acting under the authority provided by the GIPD policies, Dreher impounded the pickup, made arrangements for the pickup to be towed to police headquarters, and conducted what Dreher described as an "inventory" search. Dreher began the search on the driver's side of the pickup and then attempted to search the bed of the truck but it was covered and locked. Dreher then moved to search the passenger's side of the pickup where he found a "yellow grocery store bag" on the floorboard on the front passenger's side. Upon picking up the yellow plastic bag, Dreher found a "large baggie" containing a crystalline substance identified as methamphetamine inside the yellow bag. (Filing No. 47, TR. 31). Dreher also noted the pickup contained a stereo and a "sub box" containing speakers for the pickup's stereo system. The stereo and speakers were itemized on the police department's "tow inventory sheet" which the GIPD uses to report the items found in impounded and inventoried vehicles. (Ex. 3).

Through his previous records checks, Dreher knew that no vehicles were registered to Contreras. The pickup truck Contreras was driving on October 30, 2012 had in-transit tags and no license plates. At some point during the stop, Dreher placed a call to the Grand Island Emergency Center, the dispatch for the GIPD, to try and identify the registered owner of the pickup Contreras was driving. The Grand Island Emergency Center ("GIEC") informed Dreher the pickup was registered to Jenny Perez.[3]

The law enforcement officers contacted a private tow company and requested a flatbed wrecker to tow the pickup to the city impound lot. Since the pickup was parked in a Wal-Mart parking stall, once the wrecker arrived, Dreher drove the pickup to an open area near the front of the store so it was accessible for attachment to the wrecker.

---

[3] It was later determined that the true owner of the vehicle was Yahaira Torres. Perez had recently transferred ownership to Torres, but the records accessed by the Grand Island Emergency Center did not yet reflect that transfer.

On November 8, 2012, a criminal complaint was filed against Contreras in this court. (Filing No. 1). The complaint alleges Contreras knowingly and intentionally possessed with intent to distribute methamphetamine, its salts, isomers, and salts of its isomers. Contreras has moved to suppress the evidence obtained as a result of the impoundment and search of the pickup.

## LEGAL ANALYSIS

Contreras argues his Fourth Amendment right to be free from unreasonable searches and seizures. Contreras asserts both the impoundment and the search of his vehicle were impermissible and all evidence obtained as a result of the impoundment and search should be suppressed.

  A. <u>The Impoundment of the Pickup</u>.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Outside of "a few specifically established and well-delineated exceptions," warrantless searches and seizures are generally impermissible under the Fourth Amendment. United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993). As an exception to the warrant requirement, under some circumstances, police may impound and search a vehicle in accordance with the policies enacted and followed by the law enforcement agency conducting the search. United States v. Kimhong Thi Le, 474 F.3d 511, 514 (8th Cir. 2007).

> The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy – even a policy that provides officers with discretion as to the proper course of action to take – and the decision is made "on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987).

Kimhong Thi Le, 474 F.3d at 514.

"Impoundment of a vehicle for safety of the property and the public is a valid 'community caretaking' function of the police." United States v. Petty, 367 F.3d 1009, 1012 (8th Cir. 2004)(internal citation omitted). The decision to impound a vehicle does not require a "mechanical" application of law enforcement policy. An impound policy "may allow some 'latitude' and 'exercise of judgment' by a police officer when those decisions are based on concerns related to the purposes of an impoundment." Id. Even if the officer suspects the impoundment may lead to the discovery of incriminating items, the impoundment of a vehicle is proper "so long as [the] sole purpose [of the impoundment] is not to investigate a crime." Id. at 1013.

Pursuant to GIPD policy, as written and applied by GIPD law enforcement officers, the vehicle Contreras was driving was impounded for two independent reasons. First, unless extenuating circumstances exist, under GIPD policy, "[o]fficers will tow all vehicles involving the custodial arrest of the driver of the vehicle unless there are extenuating circumstances." The evidence of record demonstrates that "extenuating circumstances" were not present in this case. That is, Contreras was by himself and there was no owner or other person responsible for the vehicle present at the time Contreras was arrested. Moreover, it was not clear to the law enforcement officers who actually owned the pickup. Thus, the law enforcement officers' actions were consistent with "community caretaking." Rather than leave the pickup unattended in the parking lot, they took possession of the vehicle until the actual owner could be determined.

Second, despite Contreras' assertions to the contrary, the pickup was part of a criminal investigation once Contreras provided a Mexican identification card with a false name on it and was taken into custody. Although Dreher testified that the pickup was not the subject of a criminal investigation at the time he first observed Contreras driving, he

6

later testified that when the driver of a vehicle is placed under arrest, the policy regarding the criminal investigation requirement is applicable. That is, the vehicle is part of the criminal investigation. This is especially true in the case now before the court. At the time of arrest, law enforcement officials did not know to whom the pickup belonged. The officer's decision to impound the vehicle was reasonable and complied with GIPD policy to take custody of the vehicle to determine who owned the vehicle and whether Contreras gained possession of the pickup lawfully.

Contreras further argues that the GIPD had other, less intrusive options, such as leaving the vehicle parked in the Wal-Mart parking lot. However, the Fourth Amendment does not require law enforcement officers to leave a vehicle even if it is lawfully parked and poses no threat to the public. See United States v. Hood, 183 F.3d 744, 746 (8th Cir. 1999)(police may take protective custody of a vehicle where the driver has been arrested even if the vehicle is lawfully parked in a private lot). Rather, the vehicle may be impounded in accordance with established police policy. Id. Because GIPD policy was followed in this case, the impoundment of the pickup was reasonable.

Finally, Contreras suggests the stop and arrest were mere pretext for the GIPD's desire to conduct a drug-related search. Because GIPD policy was followed, the fact that Contreras was a criminal suspect is immaterial. "That an officer suspects he might uncover evidence in a vehicle, however, does not preclude the police from towing a vehicle and inventorying the contents, as long as the impoundment is otherwise valid." Petty, 367 F.3d at 1013 (citing United States v. Garner, 181 F.3d 988,991-92 (8th Cir.1999)). Even if Dreher anticipated he might find incriminating evidence in the vehicle, the search was not conducted solely to locate this evidence. The impoundment was valid under GIPD policy and the law enforcement officers' community caretaking functions, thus his Fourth Amendment rights were not violated by the impoundment of the pickup.

B.     Search of the Pickup.

Contreras also argues the search of the pickup was impermissible because it did not follow GIPD policy. Like the impoundment of vehicles, "inventory searches" are part of law enforcement's community care taking function and are an exception to the general Fourth Amendment prohibition against warrantless searches. See United States v. Rowland, 341 F.3d 774, 778 (8th Cir. 2003). "The inventory search is necessary for 'the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger.' " United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011)(quoting South Dakota v. Opperman, 428 U.S. 364, 369 (1976); see also United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993)(explaining that an inventory search is consistent with community caretaking functions to protect the driver and owner from risk of theft or vandalism and to protect "the police, the tow truck driver, and impound lot employees from claims they had lost or stolen the [vehicle's] contents").

An inventory search must be reasonable under the totality of circumstances. Id.

> The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally "remove the inference that the police have used inventory searches as 'a purposeful and general means of discovering evidence of a crime.' "

Taylor, 636 F.3d at 464 (quoting United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993)).

The GIPD inventory policy provides, in part: "All motor vehicles towed or impounded by the Grand Island Police Department will be inventoried for unattached property by the impounding officer." The policy further provides that the "property shall be documented and included on the vehicle tow report. These notations will include the

8

location where the item was found and a brief description." The policy also instructs officers to search "containers inside which may hold items of value, dangerous instruments or contraband." (Ex. 2; "Vehicle Inventories" § II(C)).

The law enforcement officers followed this GIPD policy when they searched the vehicle Contreras was driving. Dreher searched the front cabin of the pickup and bed of the truck. He inventoried the only items of value found – the subwoofer box, subwoofers, and the stereo. Pursuant to GIPD policy, he searched inside the yellow plastic bag found on the floor of the vehicle, i.e. "a container that could have held an item of value, a dangerous instrument or contraband." Because the search was conducted in a matter consistent with established policy, it was not unconstitutional. See Kimhong Thi Le, 474 F.3d at 515 (law enforcement officer's search inside a duffel bag during an inventory search was consistent with an established policy and did not violate the Fourth Amendment).

Contreras argues his case is on equal footing with Taylor. The Taylor court suppressed evidence found during the search of a vehicle because law enforcement officials did not follow department procedure for inventory searches. In Taylor, the court found the law enforcement officer did not properly inventory the items found in the defendant's vehicle and, based on the testimony of the law enforcement officer in question, that the entire search was pretext for an underlying drug investigation. Taylor, 636 F.3d at 464-65. The Taylor facts do not exist in this case. Dreher created an inventory of the only items of significant value in the pickup and reported those items on the tow sheet. There is no evidence that valuable items in the pickup were not listed on the inventory or that Dreher did not substantially comply with the GIPD policy addressing inventory searches.

9

Moreover, Dreher's meeting with Contreras on the date of the arrest was happenstance and not part of a larger investigation. In Taylor, law enforcement officers testified that the stop, the arrest, the towing of the vehicle, and the inventory search were all based on the officer's belief that Taylor was transporting illegal drugs. Taylor, 636 F.3d at 465. Here, although Contreras was suspected of being involved in illegal drug trade, the stop and arrest of Contreras, and the resulting inventory of the vehicle he was driving, was based on the outstanding bench warrant for Contreras. The fact that the law enforcement officers had suspicions about Contreras' involvement with illegal drugs is of little import unless the law enforcement officers were motivated to stop and search the vehicle solely for investigatory purposes. See Taylor, 636 F.3d at 465 (noting that "even if police fail to adhere to standardized procedures, the search is nevertheless reasonable provided it is not pretext for an investigatory search"); see also United States v. Hall, 497 F.3d 846, 852 (8th Cir. 2007) (finding an inventory search that does not follow police procedure does not necessarily require suppression of evidence unless there is evidence law enforcement officers attempted to characterize their actions as an inventory search after the fact in an attempt to justify their investigatory motives).

After considering the totality of the circumstances as supported by the credible evidence of record, the search of the vehicle Contreras was driving complied with GIPD policy, was not performed solely to investigate suspected illegal drug activity, and did not violate Contreras' Fourth Amendment rights.

Accordingly,

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Lyle E. Strom, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by the defendant (Filing No. 28) be denied in its entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 8th day of April, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.